**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **EDWARD SWAN, JR. AND RUBYE SWAN,**) | **CASE NO. 1:15 CV 97** |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **JUDGE DONALD C. NUGENT** |
| ) | |
| **SAFECO INSURANCE COMPANY** ) | |
| **OF INDIANA,** ) | |
| ) | |
| Defendant. ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Motion for Summary Judgment filed by Defendant, Safeco Insurance Company of Indiana ("Safeco"). (Docket #30.) Pursuant to Fed. R. Civ. P. 56, Safeco seeks summary judgment as to the claims asserted by Plaintiffs, Edward Swan, Jr. ("Mr. Swan") and Rubye Swan.

**I.    Summary of Facts.**[1]

On April 20, 2012, Safeco issued an insurance policy to Rubye Swan and Edward Swan, Sr., Policy No. OK5704513 ("the Policy") with an effective date of April 20, 2012. (Complaint at Paragraph 4; Affidavit of Elizabeth Tobler, Exhibit A to Safeco's Motion for Summary Judgment ("Tobler Affidavit"), at Paragraph 4.) Plaintiff, Edward Swan, Jr. ("Mr. Swan"), is the adult son of Edward Swan, Sr. and Rubye Swan and reported that he lived with them since the

---

[1]    The facts as stated in this Memorandum Opinion and Order are taken from the Parties' submissions. Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving Party.

inception of the Policy. (Tobler Affidavit at Paragraph 10.)

In May 2012, coverage was added to the Policy for a sable Russian fur coat that Mr. Swan alleges was gifted him by Jeanne Weiss in 2010. (Complaint at Paragraph 7; Plaintiffs' Brief in Opposition at p. 2; Tobler Affidavit at Paragraph 6.)[2] The Valuable Articles Schedule lists the "Sable Russian Fur" at an insured amount of $175,000, which was supported by an October 27, 2011 Neiman Marcus Appraisal. (Plaintiffs' Brief in Opposition at p. 2 and Exhibit B; Tobler Affidavit at Paragraph 7.) The Policy was renewed in April 2013.

On December 18, 2013, Mr. Swan filed a Police Report, alleging that the fur coat was stolen from his car. Mr. Swan reported that he had retrieved the fur coat from a storage facility and laid it in the back seat of his car; drove to a rental property to collect rent from a tenant, where he stayed for about 20 minutes before driving home; and, upon returning home, he noticed the fur coat was gone. (Complaint at Paragraph 13; Tobler Affidavit at Paragraph 9.) The Cleveland Police Department investigated and found no signs of forced entry and no other items were taken from the car. (Plaintiffs' Brief in Opposition at p. 2 and Exhibit C; Tobler Affidavit at Paragraph 9.) The Policy was in effect at the time of the theft.

Plaintiffs reported the theft to Safeco in December 2013 and, given inconsistencies in the information provided by Mr. Swan and others, Safeco undertook an extensive investigation regarding how Mr. Swan obtained the fur coat and the circumstances surrounding its alleged

---

[2] In their Statement of Facts, Plaintiffs alleged Mr. Swan was given the fur coat in 2010. (Plaintiffs' Brief in Opposition at p. 2.) In his Complaint, Mr. Swan alleges that Ms. Weiss obtained the coat from Neiman Marcus in 2009 and that Ms. Weiss gifted him the coat thereafter. (Complaint at Paragraphs 6-7.) In Court filings in a separate lawsuit, discussed in more detail below, Plaintiffs stated, for purposes of arguing the statute of limitations had run, that because it was alleged that Ms. Weiss and Mr. Swan had a romantic relationship from November 2007 to sometime in 2009, the statute of limitations for the conversion claim began to run, at the latest, in 2009 when the relationship ended.

theft.³ (Tobler Affidavit at Paragraphs 10-12.) Despite inconsistencies and what it believed to

---

³

      Elizabeth Tobler is a Senior Claims Resolution Specialist for Safeco and was personally involved in handling the claim made by Mr. Swan and Rubye Swan. (Tobler Affidavit at Paragraphs 2 and 3). She stated the following based upon her personal involvement and the business records kept by Safeco regarding the claim:

      "When Safeco asked Mr. Swan for basic background information about his purchase of the coat, he provided a string of inconsistent responses to Safeco. He initially reported to Safeco that he bought it for $75,000 from Neiman Marcus in California. He later said he obtained it by trading several high end accessories to his friend Jeanne Weiss in exchange for the coat. Finally, he said he was gifted the coat by Jeanne Weiss. The Swans explained that Mr. Swan had not initially reported that because he feared being perceived as a 'gigolo.'" (Tobler Affidavit at Paragraph 12.)

      "Mr. Swan testified during an examination that he had never tried to sell the coat or taken it out of storage until the day of the theft. After the examination under oath, the Swans' attorney notified Safeco that in fact – contrary to Mr. Swan's testimony – he had taken it out of storage in September 2013 and returned it in November 2013. Mr. Swan later revealed that he had in fact attempted to sell the coat to a friend, Julie Givens." (Tobler Affidavit at Paragraph 13.)

      "Ms. Givens initially told Safeco that she recalled viewing the coat but that she and Mr. Swan never discussed price and she did not remember much else. A week later, Ms. Givens, on her own initiative, called Safeco stating she felt uncomfortable since the last call and had a bad feeling; she told Safeco's adjuster that if Mr. Swan was trying to commit insurance fraud she did not want any part of it. Ms. Givens went on to explain that Mr. Swan showed her the coat in the fall of 2013 saying he was selling it for a friend, a lady in L.A. Ms. Givens also reported to Safeco that Mr. Swan showed her an appraisal or receipt for $127,000 for the coat, but told her 'you didn't see that paperwork.' Several months after she saw the coat, Ms. Givens remembers Mr. Swan telling her that he sold the coat pretty quickly after showing it to her. Finally, Ms. Givens revealed that when Mr. Swan contacted her about her discussions with Safeco and she asked Mr. Swan 'well didn't you sell the coat' that Mr. Swan changed his storey and told her 'oh, no.'" (Tobler Affidavit at Paragraph 14.)

      "The original owner of the fur coat, Jeanne Weiss, was incapacitated by the time of the loss and could not be interviewed by Safeco. Her caregiver, Melissa Sandoval, however, informed Safeco that Ms. Weiss had previously given money to Mr. Swan, that he had never re-paid it, and that Mr. Swan was no longer in contact with Ms. Weiss." (Tobler Affidavit at Paragraph 15.)

      "Frank Weiss, the trustee for the Jeanne Weiss Irrevocable Trust, contacted Safeco in June 2014 and referred to Mr. Swan as a 'criminal' who Mr. Weiss suspected of stealing more than $100,000 from Jeanne Weiss. Mr. Weiss reported that when he

-3-

be questionable circumstances, Safeco ultimately accepted loss and offered settlement for the fur coat based on the statements of Ms. Weiss's former assistant, Mayra Barba, who stated that she witnessed Ms. Weiss give Mr. Swan the fur coat as a gift in 2010. (Tobler Affidavit at Paragraph 18.)

Safeco then contacted the coat's manufacturer, Sorbara Furs, and was told that the replacement cost for the fur coat was $80,000 and initially issued payment in the amount of $20,250 to Plaintiffs, representing a total estimate of replacement cost value at $81,000, less recoverable depreciation of $60,750. At that time, based on the statements made by Mr. Swan that the coat was originally a gift to Ms. Weiss from her husband, Safeco states that it erroneously believed the coat to be nearly 40 years old. (Plaintiffs' Brief in Opposition at p. 2 and Exhibit D; Tobler Affidavit at Paragraph 20.) Plaintiffs informed Safeco that the coat was

---

began reviewing Ms. Weiss' checking account, he saw checks for approximately $100,000 written to Mr. Swan by Ms. Weiss, which Mr. Weiss believes was an investment in Mr. Swan's purported business of importing purses from Europe. Mr. Weiss told Safeco he felt it very unlikely that Ms. Weiss would give the coat to Plaintiff, as the coat was a gift his father had given to Ms. Weiss in the 1970s." (Tobler Affidavit at Paragraph 16.)

"Mr. Weiss' son Rick Brucker also spoke with Safeco's investigator and described Mr. Swan as a 'scam artist.' Mr. Brucker told Safeco that Mr. Swan sold purses to Ms. Weiss and her friends, and that Ms. Weiss was never paid back any of the money she invested with Mr. Swan. Mr. Brucker had tried to contact Mr. Swan previously but said he had been given false addresses." (Tobler Affidavit at Paragraph 17.)

"After several months of investigation, Safeco ultimately made contact with Ms. Weiss' former assistant, Mayra Barba, who informed Safeco's investigator that she saw Ms. Weiss gift the fur coat to Mr. Swan. Ms. Barba was not aware of the entirety of the business between Mr. Swan and Ms. Weiss, but she told Safeco she was present on the day Ms. Weiss gave Mr. Swan the fur coat. Given this information, despite many troubling issues uncovered in its investigation and Mr. Swan's changing version of events, Safeco accepted the loss for settlement by letter to the Swans' then-counsel LaVerne Boyd on July 21, 2014." (Tobler Affidavit at Paragraph 18.)

-4-

only four years old, as the original was lost in storage and had been replaced with a new coat and, after receiving supporting documentation, Safeco re-issued payment on November 6, 2014 for $60,000, representing the actual cash value of the coat at the time of the theft, minus $20,000 in recoverable depreciation. (Plaintiffs' Brief in Opposition at Exhibit F; Tobler Affidavit at Paragraphs 19-21.)

Plaintiffs rejected the payment and requested payment of $175,000, based on a higher appraisal which considered the coat's Neiman Marcus label. (Plaintiffs' Brief in Opposition at p. 4; Tobler Affidavit at Paragraph 20.) Further, Plaintiffs claimed there was no evidence of "wear, tear, deterioration or obsolescence" and that on the date of the loss the coat was in "new and unused condition," thus the deduction for depreciation was unwarranted. (Plaintiffs' Brief in Opposition at p. 3; Tobler Affidavit at Paragraph 22.) Safeco stood by its $60,000 payment. Plaintiffs also note that Safeco never revised its $60,000 offer to reflect the "actual cash value" of $65,000-$70,000 determined by Safeco's own appraiser, as evidence of bad faith. (Plaintiffs' Brief in Opposition at p. 4.)

Meanwhile, on October 28, 2014, Frank B. Weiss as Trustee for the Jeanne Weiss Irrevocable Trust ("the Weiss Trust"), filed a lawsuit against Plaintiffs in the Cuyahoga County Court of Common Pleas, Case No. CV 14 834984, alleging conversion ("the Weiss Trust Lawsuit"). (Complaint at Paragraph 19; Tobler Affidavit at Paragraph 23.) Plaintiffs made a claim with Safeco seeking payment under the Policy of defense costs for the Weiss Trust's conversion suit lawsuit against them.

The Weiss Trust Lawsuit alleged that from 1988 until 2001, Jeanne Weiss owned a full length Russian sable coat; that in 2001, Ms. Weiss purportedly transferred ownership of the coat to the Weiss Trust; that from November 2007 until sometime in 2009, Ms. Weiss and Mr. Swan

-5-

were purportedly in a romantic relationship; and, that at some unknown point in time, Mr. Swan obtained possession of the coat. (Weiss Trust Complaint, Tobler Affidavit at Exhibit 2.) The Weiss Trust Lawsuit alleged that the coat never belonged to Mr. Swan or Rubye Swan; was owned at all times by Ms. Weiss or the Weiss Trust; and, that Mr. Swan and Rubye Swan wrongfully converted the fur coat. (Id.)

Plaintiffs moved to dismiss the conversion suit, disputing the Weiss Trust's conversion claim and arguing, in part, that the claim was filed beyond the applicable four-year statute of limitations because, under the facts as alleged, the claim would have accrued from a date no later than "sometime in 2009," when the relationship between Mr. Swan and Ms. Weiss ended. (Tobler Affidavit at Exhibit 3.) The Weiss Trust did not oppose the Motion and voluntarily dismissed the conversion suit.

As stated above, the Policy had an initial effective date of April 20, 2012. Safeco denied Plaintiffs' claim for defense costs on the basis that the alleged conversion occurred prior to the time Plaintiffs were insured by Safeco and under the Policy's exclusion for intentional acts.

**II.     Procedural History.**

Plaintiffs initially filed their Complaint against Safeco in the Cuyahoga County Court of Common Pleas on December 17, 2014, Case No. CV 14 837580. On June 16, 2015, Safeco filed its Notice of Removal. (Docket #1.) Plaintiffs' Complaint against Safeco alleges the following: Count One – Breach of Contract, arguing that Safeco's offer of payment for the fur coat was not high enough; Count Two – Breach of Contract, arguing that Safeco should have provided for Plaintiffs' defense costs in a suit brought by Frank B Weiss accusing Mr. Swan of converting the fur coat; and, Count Three – Bad Faith, relative to Safeco's handling of Plaintiffs' claim.

Pursuant to the terms of the Policy, the Parties engaged in an appraisal process, which

-6-

ultimately resulted in referral to Magistrate Judge White for a determination as to the amount of loss.  On January 19, 2016, Magistrate Judge White issued a decision and, based on the testimony of separate appraisers retained by Plaintiffs and Safeco, Magistrate Judge White found the Actual Cash Value of the fur coat at the time of the theft was $150,887.27 and Safeco issued payment to Plaintiffs in that amount, thereby resolving Count One of the Complaint.

On February 18, 2016, Safeco filed its Motion for Summary Judgment.  (Docket #30.)  Safeco argues that defense costs relating to the Weiss Trust conversion lawsuit are not covered under the Policy because the underlying incident occurred no later than "sometime in 2009" – when the alleged romantic relationship between Mr. Swan and Ms. Weiss ended –  and the Policy at issue did not go into effect until April 20, 2012, approximately three years later.  Further, Safeco argues that intentional acts are excluded from coverage (Policy at p. 14) and, therefore, Safeco owed no duty to defend the Weiss Trust Lawsuit.  Finally, Safeco argues that its actions in denying defense costs relating to the Weiss Trust Lawsuit and in its offers of payment for the loss of the fur coat were reasonably justified and there is no evidence to support Plaintiffs' bad faith claim.

On March 21, 2016, Plaintiffs filed their Memorandum in Opposition to Defendant's Motion for Summary Judgment.  (Docket #36.)  Plaintiffs argues that Safeco had a duty to defend them against the Weiss Complaint pursuant to the terms of the Policy; that the Weiss Complaint did not state a claim for conversion and that the Policy "does not categorically exclude all intentional acts or all intentional torts;" and, that the "'alleged conversion' described in the Weiss complaint occurred while the Safeco policy was in force" under a continuing violation theory.  Plaintiffs argue that Safeco's handling of their claim was arbitrary and capricious and lacked any reasonable justification, asserting that Safeco wrongfully applied

-7-

deductions to the coat's value; wrongfully failed to pay Plaintiffs the actual cash value of fur coat; and, wrongfully breached its duty to defend Plaintiffs in the Weiss action.

On April 4, 2016, Safeco filed its Reply Brief.  (Docket #38.)  Safeco reiterates its argument that it had no duty to defend the Weiss Suit because the events underlying said suit occurred years before Plaintiffs were insured by Safeco; that it had no duty to defend the Weiss Suit because it involves an alleged "intentional act" and is thus excluded from coverage; and, that its offers of payment for the loss and denial of defense costs related to the Weiss Suit were reasonably justified and not in bad faith.

**III.     Summary Judgment Standard.**

Summary judgment is appropriate when the court is satisfied "that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 5(c).  The burden of showing the absence of any such "genuine dispute" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine [dispute] of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Id.*  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249.

Determination of whether a dispute is "genuine" requires consideration of the applicable

-8-

evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual [disputes] that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

**IV.　Discussion.**

The Court has thoroughly and exhaustively reviewed the claims raised by Plaintiffs; Safeco's Motion for Summary Judgment; the briefing responsive thereto; and, all supporting documentation.

**A.　Duty to Defend.**

The Policy under which Plaintiffs argue Safeco had a duty to defend was issued on April 20, 2012, with an effective date of April 20, 2012. Coverage for the fur coat was added to the Policy in May 2012. With regard to Personal Liability coverage, the Policy provides that "[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury or

-9-

property damage caused by an occurrence to which this coverage applies," Safeco will provide the insured with a defense at its expense.  An "occurrence" is defined by the Policy as "an accident, including exposure to conditions which results in: (1) bodily injury; or (2) property damage **during the policy period**."  (Policy at pp. 14 and 24.  Emphasis added)

According to Plaintiffs, the alleged gifting of the coat from Ms. Weiss to Mr. Swan – the basis for the conversion claim brought against Plaintiffs by the Weiss Trust – occurred in 2010, long before the Safeco Policy was issued and, therefore, is not an occurrence for which there is coverage under the Policy.  Accordingly, Safeco had no duty to defend Plaintiffs against the Weiss Trust's conversion lawsuit and Safeco is entitled to summary judgment as to Count Two of the Complaint.

**B.     Bad Faith.**

"An insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315, 1319 (Ohio 1983).  "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 554, 644 N.E.2d 397, 400 (Ohio 1994).  "An insurer lacks reasonable justification when it denies an insured's claim in an arbitrary and capricious manner." *Barbour v. Household Life Ins. Co.*, Case No. 1:11 CV 110, 2012 U.S. Dist. LEXIS 46004 (N.D. Ohio April 2, 2012)(citing *Hoskins*, 452 N.E.2d at 1320).  "However, denial of a claim may be reasonably justified when 'the claim was fairly debatable and the refusal is premised on either the status of the law at the time of the denial or the facts that gave rise to the claim.'" *Barbour*, 2012 U.S. Dist. LEXIS 46004, at *14 (quoting *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St. 3d 621, 630, 605 N.E.2d 935 (1992)).

Denial of defense costs associated with the Weiss Trust's lawsuit was proper and disagreement as to the proper valuation of the fur coat, without more, does not establish bad faith. *Schreiber v. State Farm Ins. Co.*, 494 F. Supp. 2d 758, 769 (S.D. Ohio 2007)(citing *Eagle Am. Ins. Co. v. Frencho*, 111 Ohio App. 3d 213, 223 (Ohio App. 10 Dist. 1996)). Further, Safeco was reasonably justified in undertaking a thorough investigation prior to approving any payment on Plaintiffs' claim prior to issuing payment given the inconsistent information provided Mr. Swan and others. Once Safeco concluded, based on Ms. Barba's statement, that it must pay Plaintiffs' claim, Safeco was reasonably justified in relying on the replacement value given by the fur coat's manufacturer and an independent appraiser in its determinations as to the coat's value, and promptly reacted to new information as it was received. Ultimately, Safeco issued payment to Plaintiffs in the amount of $150,887.27, the value of the fur coat as determined by the Magistrate Judge after hearing evidence from appraisers for both Plaintiffs and Safeco. Simply put, there is nothing in the record to support Plaintiffs' allegations that any of Safeco's actions were in bad faith, arbitrary and capricious, or otherwise not reasonably justified. Accordingly, Safeco is entitled to summary judgment as to Count Three of the Complaint.

**V.      Conclusion.**

For the foregoing reasons, the Motion for Summary Judgment filed by Safeco (Docket #30) is hereby granted.

This case is hereby TERMINATED.

IT IS SO ORDERED.

      */s/Donald C. Nugent*
      DONALD C. NUGENT
      United States District Judge

DATED:  May 20, 2016